[No. S072071. Mar. 15, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY TOMMIE JONES, Defendant and Appellant.

**COUNSEL**

Peter A. Leeming, under appointment by the Supreme Court; and Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Carol Wendelin Pollack, Assistant Attorney General, Robert F. Katz, Steven D. Matthews and Brad D. Levenson, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**MOSK, J.**—Defendant Gregory Tommie Jones was convicted of acts of forcible rape, sodomy, and oral copulation against a single victim, with findings, as to each offense, of kidnapping and use of a deadly weapon. It was found that he committed the offenses on more than a "single occasion" within the meaning of Penal Code section 667.61, subdivision (g), part of the so-called one strike law, which provides that a term of life imprisonment "shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion." It was also found that defendant, who wielded a knife against the victim after the sexual assaults were completed, used the weapon "in the commission of" the crimes, within the meaning of Penal Code section 12022.3. The Court of Appeal affirmed both findings.

We granted review to address two separate questions involving statutory construction. First, what is the meaning of the phrase "single occasion" under Penal Code section 667.61, subdivision (g)? Second, can the use of a deadly weapon *after* the completion of a sex offense constitute its use "in the commission of" the offense for purposes of Penal Code sections 12022.3, subdivision (a), and 667.61, subdivision (e)(4)? As will appear, we conclude that multiple sex offenses occurred on a "single occasion" within the meaning of Penal Code section 667.61, subdivision (g), if there was a close

temporal and spatial proximity between offenses. We further conclude that the use of a deadly weapon after completion of sexual offenses occurred "in the commission of" such offenses, within the meaning of Penal Code sections 12022.3, subdivision (a) and 667.61, subdivision (e)(4), if the offenses posed a greater threat of harm *because* the defendant used a deadly weapon to threaten or maintain control over his victim. Accordingly, we reverse the judgment of the Court of Appeal.

## I

The underlying facts, as pertinent to the issues raised herein, are largely undisputed.

At 8:00 or 9:00 p.m. on the evening of July 23, 1996, Carolyn F., who is hearing and speech impaired, and small in stature, began walking home from a friend's house, where she had consumed alcohol and drugs. As she approached an alley, defendant, a neighborhood beggar, grabbed her by the neck and forced her into a filthy garage.

Defendant opened the driver's door of a car and forced F. into the back-seat. He removed his clothing; he was not wearing underwear. While he was choking and hitting her, he attempted to pull off her clothes; she assisted him because she "didn't want him to beat [her] up anymore."

Defendant pulled on the hair on the back of F.'s head and, while hitting her head, put his penis in her mouth. She tried to get away, but he kept hitting her. At one point, he slapped her face and told her to "do it deeper." He pushed her head "hard on it, deeper." She testified that he had his penis in her mouth "like 30 minutes, or something," a "really long time."

Defendant then forced F. to recline on the seat with her legs up to her shoulders. While he was hitting her and had his hands on her throat, he put his penis in her vagina. She found it "disgusting"; she was crying and frightened but was unable to fight him. He subsequently removed his penis. He then pushed her legs up as high as he could, near her head, and put his penis in her anus. She was screaming because he was hurting her. Three anal penetrations occurred over a period of about an hour. She estimated that the period of time between the oral copulation and the time defendant had finished the anal penetrations was about an hour and a half.

Defendant pulled on his pants and got out of the car. F. reached for her clothing, but defendant pulled it away and pushed her back in the car. He reached into a slit in the car roof and retrieved a knife. He put the knife to

her face. She put her hands in a praying position and said "please, please." Shortly thereafter, he left. She grabbed her clothes and ran to her friend's house; she subsequently reported the assaults to the police. Medical examination revealed injuries consistent with sexual assault.

A jury found defendant guilty of forcible rape (Pen. Code, § 261, subd. (a)(2)), three counts of forcible sodomy (*id.*, § 286, subd. (c)), and forcible oral copulation (*id.*, § 288a, subd. (c)). It found true, as to each offense, allegations pursuant to Penal Code section 667.61 that in order to facilitate the commission of the crimes he personally kidnapped the victim and that the movement substantially increased the risk of harm (*id.*, subds. (d)(2) & (e)(1)), and that he personally used a deadly weapon (*id.*, subd. (e)(4)). It also found true, as to each offense, an allegation, pursuant to Penal Code section 12022.3, subdivision (a), that he personally used a deadly weapon.

With regard to the findings under Penal Code section 12022.3, subdivision (a), the trial court sentenced defendant to the aggravated term of 10 years for each weapons-use enhancement. Pursuant to Penal Code section 667.6, it imposed three consecutive terms, totaling 30 years, for the forcible rape, forcible oral copulation, and for one count of forcible sodomy, staying two additional 10-year terms for the remaining forcible sodomy counts. It then addressed the convictions for the underlying sex offenses. "First, the court has to consider [Penal Code section] 667.6[, subdivision] (d), to determine whether concurrent or consecutive sentencing should be imposed. [¶] And the question the court has to ask is whether each crime occurred on a separate occasion with the same victim. [¶] . . . [¶] The question the court has to ask is between the commission of one sex crime and the next, did the defendant have a reasonable opportunity to reflect on his actions, and then resume sexually assaultive behavior. Is one sex act really incidental to the next?" It found that the crimes occurred on separate occasions, within the meaning of Penal Code section 667.6, subdivision (d). "Based upon the factual findings . . . , the court believes that these are three distinct and separate violations of [F.]. [¶] First, she was forced to orally copulate the defendant. When that was concluded, there was a forcible rape. And when that was concluded, there was a forcible sodomy, where entry was made at least three times. [¶] So the court is incorporating those findings under 667.6(d), and finding that each sex crime enumerated, that is, the oral copulation, the rape, and the sodomy, occurred on a separate occasion with the same victim."

The trial court imposed sentences for the forcible rape, forcible oral copulation, and one count of forcible sodomy as follows. It sentenced defendant to three consecutive terms of 25 years to life, pursuant to Penal

Code section 667.61, subdivisions (a), (c), and (d)(2). It also imposed full, separate, and consecutive terms on those counts pursuant to Penal Code section 667.6, subdivision (d). The trial court imposed concurrent eight-year terms for the remaining forcible sodomy counts.

The Court of Appeal affirmed. As pertinent here, it determined that defendant was properly sentenced to three consecutive life terms. It held that when sexual "crimes involve the same victim on 'separate occasions' within the meaning of [Penal Code] section 667.6, subdivision (d), then . . . each such crime [also] has been committed against a single victim during a different 'single occasion' within the meaning of [Penal Code] section 667.61, subdivision (g)." It rejected defendant's contention that the weapons-use enhancements must be reversed because he used the knife after the final act of sodomy was completed, concluding that "the commission of" the sexual offenses specified in Penal Code section 12022.3, subdivision (a) does not end with the completion of the sex act, but continues as long as the assailant maintains control over the victim.

We granted review on both issues; we now reverse.

## II

■ Penal Code section 667.61 mandates an indeterminate sentence of either 25 years (*id.,* subd. (a)) or 15 years to life (*id.,* subd. (b)) when a defendant is convicted of certain forcible sex offenses committed under specific aggravating circumstances. Penal Code section 667.61 provides, in subdivision (g), as follows: "The term specified . . . shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion. If there are multiple victims during a single occasion, the term specified . . . shall be imposed on the defendant once for each separate victim. Terms for other offenses committed during a single occasion shall be imposed as authorized under any other law, including Section 667.6, if applicable."[1]

The meaning of the phrase "single occasion" in Penal Code section 667.61, subdivision (g) is a pure question of law. We address it, therefore, under an independent review standard. As we have often stated, our role in construing the meaning of a statue is to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*People v. Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].)

---

[1]As pertinent here, the felony sex offenses subject to punishment under Penal Code section 667.61 include forcible rape, forcible sodomy, and forcible oral copulation (*id.,* subd. (c)(1) & (6)). The circumstances include kidnapping, if the movement of the victim substantially increased the risk of harm to the victim (*id.,* subd. (d)(2)), and personal use by the defendant of a deadly weapon in the commission of the offense, in violation of Penal Code section 12022.3 (*id.,* 667.61, subd. (e)(4)).

■ Penal Code section 667.61, subdivision (g) does not define the phrase "single occasion." The Court of Appeal turned for guidance to the definition of the substantially similar term "separate occasions" under Penal Code section 667.6, subdivision (d). The latter provision mandates full, separate, and consecutive sentences for certain sex offenses "if the crimes involve separate victims or involve the same victim on separate occasions." The second paragraph of section 667.6, subdivision (d), which was added in 1986, directs the court on how to apply the requirement. "In determining whether crimes against a single victim were committed on separate occasions . . . , the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (*Ibid.*)[2]

Under the broad standard established by Penal Code section 667.6, subdivision (d), the Courts of Appeal have not required a break of any specific duration or any change in physical location. Thus, the Court of Appeal herein cited *People v. Irvin* (1995) 43 Cal.App.4th 1063, 1071 [51 Cal.Rptr.2d 127], for the principle that a finding of "separate occasions" under Penal Code section 667.6 does not require a change in location or an obvious break in the perpetrator's behavior: "[A] forcible violent sexual assault made up of varied types of sex acts committed over time against a victim, is not necessarily one sexual encounter." Similarly, the Court of Appeal in *People v. Plaza* (1995) 41 Cal.App.4th 377, 385 [48 Cal.Rptr.2d 710], affirmed the trial court's finding that sexual assaults occurred on "separate occasions" although all of the acts took place in the victim's apartment, with no break in the defendant's control over the victim. (But see *People v. Pena* (1992) 7 Cal.App.4th 1294, 1316 [9 Cal.Rptr.2d 550] [defendant's change of positions between different sexual acts was insufficient by itself to provide him with a reasonable opportunity to reflect upon his actions, "especially where the change is accomplished within a matter of

---

[2]The express legislative purpose for including the explication of the phrase "separate occasions" was "to abrogate the decision in [*People v. Craft* (1986) 41 Cal.3d 554 [224 Cal.Rptr. 626, 715 P.2d 585]], and to establish an objective test for determining whether sex crimes against a single victim occurred on separate occasions." (Stats. 1986, ch. 1431, § 2, p. 5129.) *Craft* had construed Penal Code section 667.6, subdivision (d) "in a narrow manner," as applying only when, between sexual assaults on a single victim, a defendant temporarily lost or abandoned the opportunity to continue his attack. (*Craft, supra,* 41 Cal.3d at p. 561.) The legislative history reveals the aim to provide "a broader, less stringent standard to prove that multiple sex crimes occurred against the same victim on separate occasions." (Cal. Youth and Adult Correctional Agency, Enrolled Bill Rep. on Assem. Bill No. 2295 (1985-1986 Reg. Sess.) Sept. 1986, p. 2.)

seconds"]; *People v. Corona* (1988) 206 Cal.App.3d 13, 18 [253 Cal.Rptr. 327] [holding, after the respondent implicitly conceded the point, that the trial court erred in imposing consecutive sentences for different sexual acts when there was no cessation of sexually assaultive behavior "between" acts].)

The Court of Appeal herein emphasized the principle that when legislation has been judicially construed and a subsequent statute on a similar subject uses identical or substantially similar language, the usual presumption is that the Legislature intended the same construction, unless a contrary intent clearly appears. It further stressed that Penal Code sections 667.61 and 667.6, subdivision (d) both pertain to sentencing of sex offenses and that the statutes are interrelated. On these bases it concluded that when "crimes involve the same victim on 'separate occasions' within the meaning of section 667.6, subdivision (d), then . . . each such crime [also] has been committed against a single victim during a different 'single occasion' within the meaning of section 667.61, subdivision (g)."

Although the Court of Appeal's interpretation is not implausible, it is not persuasive. The phrases "separate occasion" and "single occasion" are similar but they are not identical. The Legislature, in drafting Penal Code section 667.61, subdivision (g), could have, *but did not*, use the statutory language of Penal Code section 667.6, subdivision (d), nor did it expressly refer to the detailed definitional guidance included therein. It would have been a simple matter to cross-reference the definition under the earlier statute; the Legislature chose not to do so.

When the Legislature has intended a specific definition of the similar phrase "separate occasion," it has clearly so indicated. Thus, as discussed, it provided unambiguously in Penal Code section 667.6, subdivision (d) that the appropriate analysis for determining whether sex offenses occurred on "separate occasions" was whether the defendant had a reasonable opportunity for reflection. Similarly, in former Penal Code section 1170.1, subdivision (b)(1), which determined the aggregate term for multiple convictions for kidnapping "involving separate victims or the same victim *on separate occasions*" (italics added), the Legislature, in former section 1170.1, subdivision (b)(2), again provided a special meaning for the operative phase: "As used in this subdivision, 'separate occasion' means the defendant committed a second violation of Section 207 involving the same victim after at least 24 hours elapsed following his or her release of the victim." (Stats. 1993, ch. 611, § 17.98, p. 3543.)

Nor, as we noted in *People v. Deloza* (1998) 18 Cal.4th 585, 598 [76 Cal.Rptr.2d 255, 957 P.2d 945], has the Legislature consistently used the

term "separate occasions" to refer "either [to] the intent and objective of the defendant or [to] the temporal proximity between the relevant events." Accordingly, we have not viewed our courts as bound to apply the broad definition of "separate occasion" in Penal Code section 667.6, subdivision (d) to other sentencing statutes. Thus, *Deloza*, examining the phrase "committed on the same occasion" in subdivision (a)(6) and (7) of Penal Code section 1170.12—the so-called three strikes law—determined that the words "same occasion" should be interpreted according to their "ordinary, generally understood meaning" of "at least a close temporal and spatial proximity between two events, although it may involve other factors as well." (*People v. Deloza, supra,* 18 Cal.4th at p. 594; see also *People v. Lawrence* (2000) 24 Cal.4th 219, 227 [99 Cal.Rptr.2d 570, 6 P.3d 228].) *Deloza* rejected the argument of the People, similar to the one urged herein, that analysis under the three strikes law should necessarily depend on whether the defendant had a reasonable opportunity for reflection, as under Penal Code section 667.6, subdivision (d). "Nothing in the ballot pamphlet or even the legislative history of the Legislature's version of the three strikes law supports such a conclusion." (*Deloza, supra,* 18 Cal.4th at p. 598.) Here, too, nothing in the legislative history points unequivocally to such a requirement.[3]

Moreover, applying the reasonable opportunity for reflection analysis of Penal Code section 667.6, subdivision (d) to sentencing determinations under Penal Code section 667.61, subdivision (g) appears inconsistent with the reference by the Legislature in the latter provision to "multiple victims during a single occasion." In the case of a defendant who sequentially assaults multiple victims even in close temporal and spatial proximity, it would be difficult to imagine the crimes ever occurring "during a single occasion" under Penal Code section 667.61, subdivision (g), because the perpetrator would virtually always have an opportunity for reflection when changing victims. Although it is certainly possible to commit crimes involving "multiple victims during a single occasion" under the opportunity for

---

[3]We grant the People's request for judicial notice of the legislative history of Penal Code section 667.61, which indicates that an early version of Assembly Bill No. 1029, which, along with a companion Senate bill, led to the present statute, provided that "[t]here shall be only one violation of this section per victim per incident." (Assem. Bill No. 1029 (1993-1994 Reg. Sess.) § 1, as amended May 16, 1994.) The bill was later amended to refer to a "single occasion" (Assem. Bill No. 1029 (1993-1994 Reg. Sess.) § 1, as amended Aug. 19, 1994) after the original terminology was criticized as follows: "The term 'incident' is not generally used or defined in relation to sex offenses. *The term 'occasion' is used and defined for the application of sex offenses.*" (Off. of Crim. Justice Planning, Analysis of Assem. Bill No. 1029 (1993-1994 Reg. Sess.) June 29, 1994, p. 4, italics added.) Significantly, the legislative history includes no specific reference to any particular definition of the term "occasion"; nor does it otherwise explain its choice of the phrase "single occasion." Without a clearer statement, we fail to discern the intent of the Legislature to adopt the definitional guidelines· of the differently worded provision under Penal Code section 667.6, subdivision (d).

reflection standard—e.g., a defendant forcibly requiring one victim to perform a sexual assault on another victim (see *People v. Bradford* (1997) 15 Cal.4th 1229, 1280 [65 Cal.Rptr.2d 145, 939 P.2d 259]; *People v. Roberts* (1972) 26 Cal.App.3d 385, 386-387 [103 Cal.Rptr. 25])—we doubt that such circumstances were the Legislature's foremost concern when drafting the statutory language.

Further, given the harshness of the punishment dictated by Penal Code section 667.61, subdivision (g)—of life imprisonment—and the lack of definitive legislative direction, the rule of lenity also points to the conclusion that the Legislature intended to impose no more than one such sentence per victim per episode of sexually assaultive behavior. (See *People v. Garcia* (1999) 21 Cal.4th 1, 10 [87 Cal.Rptr.2d 114, 980 P.2d 829] [describing the rule or interpretive guideline under which courts generally " 'construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit' "].) In this matter, for example, the rule we adopt should result in a *single* life sentence, rather than *three* consecutive life sentences, for a sequence of sexual assaults by defendant against one victim that occurred during an uninterrupted time frame and in a single location.

Accordingly, we conclude that, for the purposes of Penal Code section 667.61, subdivision (g), sex offenses occurred on a "single occasion" if they were committed in close temporal and spatial proximity.

## III

Penal Code section 12022.3, subdivision (a), as pertinent, provides: "For each violation or attempted violation of Section 261 [rape], . . . 286 [sodomy] . . . 288a [oral copulation], . . . and in addition to the sentence provided, any person shall receive . . . : [¶] [an] enhancement if the person uses a firearm or a deadly weapon in the commission of the violation." Penal Code section 667.61, subdivision (e)(4) includes as one of the circumstances for a mandatory life sentence the personal use of "a dangerous or deadly weapon or firearm in the commission of the present offense in violation of Section . . . 12022.3."

■ We must answer a question of law concerning the meaning of the phrase "in the commission of" as it appears in both statutes. Specifically, can the use of a weapon *after* a series of sex crimes properly be found to have

occurred "in the commission of" the crimes? Again, we do so under a standard of independent review.[4]

In *People v. Masbruch* (1996) 13 Cal.4th 1001, 1013 [55 Cal.Rptr.2d 760, 920 P.2d 705], we expressly left open the question "whether a section 12022.3[, subdivision] (a) enhancement properly attaches when a defendant first displays a gun *after* completing a sex crime, for example, in an effort to assist his escape or deter the victim from reporting the crime."[5] As we indicated therein, the Courts of Appeal are divided on the point. (Compare, e.g., *People v. Dobson* (1988) 205 Cal.App.3d 496, 502-503 [252 Cal.Rptr. 423] with *People v. Castro* (1994) 27 Cal.App.4th 578, 585-586 [32 Cal.Rptr.2d 529].)

Our task is to construe the phrase "in the commission" as it appears in Penal Code sections 12022.3, subdivision (a), and 667.61, subdivision (e)(4). We look for guidance to our cases construing other Penal Code provisions that use the phrase "in the commission of" or substantially similar language—specifically the provisions defining felony murder (Pen. Code, § 189; see also *id.,* § 190.2, subd. (a)(17) [felony-murder special circumstance]).[6]

We long ago rejected the assumption "that to bring a homicide within the terms of section 189 of the Penal Code, the killing must have occurred 'while committing,' 'while engaged in,' or 'in pursuance' of the named felonies, and that the killing must have been 'a part of' the felony or

---

[4]Penal Code section 667.61, subdivision (e)(4) expressly refers to "a dangerous or deadly weapon or firearm in the commission of the present offense in violation of Section . . . 12022.3." It is undisputed that the phrase "in the commission of" has the same meaning under both statutes. (See *People v. Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078].)

[5]*Masbruch* held that a weapons-use enhancement under Penal Code section 12022.3, subdivision (a), covers the use of a firearm or deadly weapon " 'at least as an aid in completing an essential element of' a *subsequent* crime." (*People v. Masbruch, supra,* 13 Cal.4th at p. 1013, italics added, quoting *People v. Chambers* (1972) 7 Cal.3d 666, 672-673 [102 Cal.Rptr. 776, 498 P.2d 1024].) We emphasized " 'The obvious legislative intent to deter the use of [deadly weapons] requires that "uses" be broadly construed.' " (*People v. Masbruch, supra,* 13 Cal.4th at p. 1007.)

[6]Penal Code section 189, defining the degrees of murder, refers to murder "committed in the perpetration of" enumerated felonies. Penal Code section 190.2, subdivision (a)(17), the felony-murder special circumstance, refers to murder "committed while the defendant was engaged in . . . the commission of" enumerated felonies. Its predecessor, former Penal Code section 190.2, subdivision (c)(3) referred to murder "committed during the commission . . . of" enumerated felonies. (Stats. 1977, ch. 316, § 9, p. 1257.) In *People v. Guzman* (1988) 45 Cal.3d 915, 950 [248 Cal.Rptr. 467, 755 P.2d 917], we concluded that the statutory phrase "while engaged in the commission of" in Penal Code section 190.2, subdivision (a)(17), carries the same meaning as "during the commission of" under Penal Code section 190.2, former subdivision (c)(3).

attempted felony 'in an actual and material sense.' " (*People v. Chavez* (1951) 37 Cal.2d 656, 669 [234 P.2d 632].) Thus, a murder may be determined to have been committed in the perpetration of a felony if it occurred after the felony, e.g., during the attempt to escape or for the purpose of preventing discovery of the previously committed felony.

More recently, in *People v. Hernandez* (1988) 47 Cal.3d 315, 348 [253 Cal.Rptr. 199, 763 P.2d 1289], we reiterated that determining whether a killing occurred during the commission of a felony enumerated under Penal Code section 189 is not " 'a matter of semantics or simple chronology.' " Instead, "the focus is on the relationship between the underlying felony and the killing." (*Hernandez, supra,* 47 Cal.3d at p. 348.) In *Hernandez,* the defendant raped and sodomized his victims and then killed them when they screamed and struggled to get away; he was convicted, inter alia, of felony murder. We affirmed that the killings, which were "a direct product of the sexual assaults and to silence the victims," occurred "in the commission of" the sex crimes. (*Ibid.*)

*People v. Guzman, supra,* 45 Cal.3d 915, addressed the similar question whether a killing that took place after a rape occurred "during the commission of" the offense within the meaning of the felony-murder special circumstance, Penal Code section 190.2, subdivision (a)(17). We rejected the defendant's argument therein that the special circumstance requires that the murder have occurred at the same time as the rape or " '*no later than the moment such acts are completed.*' " (*Guzman, supra,* 45 Cal.3d at p. 950, italics in original.) Rather, we held that the dispositive question is whether the relationship between the rape and another crime was sufficiently close to justify an enhanced punishment. (*Id.* at p. 951.) We concluded that a jury could reasonably determine that a rape had not terminated "so long as the victim had not been disposed of or confined."

We presume that the Legislature, in drafting the provisions, was aware of our long-standing judicial construction of the phrase "in the commission of" as used in other Penal Code statutes and intended to incorporate it. We conclude that the phrase "in the commission of" has the same meaning for the purposes of Penal Code sections 12022.3, subdivision (a), and 667.61, subdivision (e)(4), as it does under the felony-murder provisions. As the Court of Appeal herein explained, the "commission" of a sexual offense specified in Penal Code section 12022.3, subdivision (a), does not end with the completion of the sex act, but continues as long as the assailant maintains control over the victim.

Moreover, as we explained in *People v. Masbruch, supra,* 13 Cal.4th at page 1006, the legislative intent to deter the use of firearms in the commission of specified felonies requires that "use" be broadly construed. In the

case of a weapons-use enhancement, such use may be deemed to occur "in the commission of" the offense if it occurred *before, during, or after* the technical completion of the felonious sex act. The operative question is whether the sex offense posed a greater threat of harm—i.e., was more culpable—because the defendant used a deadly weapon to threaten or maintain control over his victim.

Relying on *People v. Dobson, supra,* 205 Cal.App.3d 496, defendant contends that because he had completed the elements of the sex offenses before using the knife, the weapons-use enhancement was unrelated to those crimes. He is unpersuasive.

In *Dobson,* the defendant sexually assaulted his victim and thereafter beat her severely with a deadly weapon; he was convicted and the trial court imposed weapons-use enhancements for each offense. Reversing, the Court of Appeal explained: "For policy reasons . . . the completion of the sex offense has been narrowly defined. A narrow definition of a sex offense avoids the proscription of [Penal Code] section 654 and permits the imposition of multiple punishment for the sex offender who commits multiple offenses against a single victim." (*People v. Dobson, supra,* 205 Cal.App.3d at p. 502.) It cited *People v. Perez* (1979) 23 Cal.3d 545, 553 [153 Cal.Rptr. 40, 591 P.2d 63], which declined "to extend the single intent and objective test of section 654 beyond its purpose to preclude punishment for each such act" of sexual assault. *Dobson* reasoned: "To increase the scope of a sex offense here in order to increase punishment in this case would have the ultimate effect of reducing punishment in other sex offender cases because it would require the application of section 654 to such continuing conduct even though that conduct might constitute different sex offenses." (*People v. Dobson, supra,* 205 Cal.App.3d at p. 503.)[7]

We disagree and disapprove *People v. Dobson, supra,* 205 Cal.App.3d 496. Penal Code section 654 offers little guidance regarding the meaning of "in the commission of" under Penal Code sections 12022.3, subdivision (a), and 667.61, subdivision (e)(4): it does not use the phrase. Nor does our policy analysis in *Perez* of Penal Code section 654 as applied to multiple sex crimes assist our understanding of the legislative intent underlying weapons-use enhancements. *Perez* did not purport to address how the temporal

---

[7]In *Perez,* the question posed was whether Penal Code section 654 precludes multiple punishment for separate sex crimes committed pursuant to the same intent and objective, i.e., to obtain sexual gratification. (*People v. Perez, supra,* 23 Cal.3d at p. 552.) *Perez* determined that "[s]uch an intent and objective is much too broad and amorphous to determine the applicability of section 654. . . . To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to insure that a defendant's punishment will be commensurate with his culpability." (*Ibid.*)

duration of a sex crime must be measured for the purpose of a weapons-use enhancement. Indeed, the rationale for narrowly defining a sex crime for the purposes of Penal Code section 654—to permit commensurate punishment for the more culpable defendant who has committed multiple sex crimes against a victim—is inapplicable to the determination whether a deadly weapon was used "in the commission of" such crimes. Instead, for the reasons discussed, "a broad construction of the phrase 'in the commission of' advances the purpose of enhancements which provide for additional punishment when a weapon is used . . . ." (*People v. Castro, supra,* 27 Cal.App.4th at p. 586.)

## IV

For the foregoing reasons, we reverse the judgment of the Court of Appeal and remand the matter with directions to reverse the judgment of the superior court and remand for resentencing consistent with this decision.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**CHIN, J.**—I respectfully dissent.

The majority holds that, for purposes of Penal Code section 667.61, subdivision (g), sex offenses occurred on a "single occasion" if they were committed in close temporal and spatial proximity.[1] (Maj. opn., *ante,* at p. 107.) It necessarily finds that the term "single occasion" in this statute has a *different* meaning from the substantially similar term "separate occasions" in section 667.6, subdivision (d). It finds that, "[a]lthough the Court of Appeal's interpretation [that the two terms have the same meaning] is not implausible, it is not persuasive" (maj. opn., *ante,* at p. 105) for the following reasons: (1) the phrases "separate occasions" and "single occasion" are similar but not identical; (2) the Legislature could have incorporated, or at least referred to, the section 667.6, subdivision (d) definition when it drafted section 667.61, subdivision (g), but did not; (3) in the absence of an express definition, the phrase "single occasion" should be interpreted according to its "ordinary, generally understood meaning" of "at least a close temporal and spatial proximity between two events"; and (4) the rule of lenity supports the conclusion that the Legislature intended to impose no more than one indeterminate sentence per victim per episode of sexually assaultive behavior. (Maj. opn., *ante,* at pp. 105-107.) Unlike the majority, I find the Court of Appeal's reasoning to be both sound and persuasive.

No reason appears to interpret the virtually identical terms—"single occasion" and "separate occasions"—to have two very different meanings. Statutes may not be construed in isolation, but must be harmonized with

---

[1] All further statutory references are to the Penal Code.

reference to the entire scheme of the law of which they are a part. (*People v. Thomas* (1992) 4 Cal.4th 206, 210 [14 Cal.Rptr.2d 174, 841 P.2d 159].) "The Legislature 'is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted . . . a statute in light thereof.' " (*People v. McGuire* (1993) 14 Cal.App.4th 687, 694 [18 Cal.Rptr.2d 12].) When legislation has been judicially construed and a subsequent statute on a similar subject uses identical or substantially similar language, the usual presumption is that the Legislature intended the same construction, *unless a contrary intent clearly appears.* (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437 [35 Cal.Rptr.2d 155].) Both section 667.61, subdivision (g) and section 667.6, subdivision (d) pertain to sentencing of sex offenses and the two statutes are closely interrelated. Section 667.61 was enacted in 1994 (Stats. 1994, 1st Ex. Sess. 1993-1994, ch. 14, § 1, p. 8570), *after* the enactment of section 667.6, subdivision (d) in 1979. (Stats. 1979, ch. 944, § 10, p. 3258.) Of the eight offenses listed in section 667.61 when it was enacted, six of the sexual offenses were also specified in section 667.6, subdivision (d). The legislative definition of "separate occasions" was added to section 667.6, subdivision (d) in 1986 (Stats. 1986, ch. 1431, § 1, p. 5128), nearly a decade *before* the enactment of section 667.61, and has been subjected to judicial construction in numerous appellate court decisions.

The express legislative purpose for expressly defining the phrase "separate occasions" in section 667.6, subdivision (d) was "to abrogate the decision in [*People v. Craft* (1986) 41 Cal.3d 554 [224 Cal.Rptr. 626, 715 P.2d 585]], and to establish an objective test for determining whether sex crimes against a single victim occurred on separate occasions." (Stats. 1986, ch. 1431, § 2, p. 5129.) *Craft* had sought to resolve a conflict in the lower courts concerning the meaning of the phrase "separate occasions," which had not been defined in the statute. (*People v. Craft, supra,* 41 Cal.3d 554 (*Craft*).)

Before we attempted to clarify the meaning of "separate occasions" in *Craft,* a line of cases held that sexual offenses that were not episodically disjoined or detached by time or proximity were not "separate occasions" within the meaning of section 667.6, subdivision (d). (See, e.g., *People v. Smith* (1984) 155 Cal.App.3d 539, 545 [202 Cal.Rptr. 259] [subd. (d) not applicable where defendant never left the victim and all offenses occurred within two hours during which victim was forcibly driven from one city to another, forcibly taken into a residence, and then back to the car; subd. (d) applicable only in situations where a significant period of time elapsed between crimes]; *People v. Reeder* (1984) 152 Cal.App.3d 900, 914-915 [200 Cal.Rptr. 479] [subd. (d) found not applicable where sexual offenses were committed against one victim in one uninterrupted sequence over a short period in a parked car at the same location]; *People v. Collins* (1983)

143 Cal.App.3d 742, 744-746 [192 Cal.Rptr. 101] [subd. (d) not applicable where defendant and another man committed numerous forcible sex offenses against one victim during a two- or three-hour period]; see also *People v. Fleming* (1983) 140 Cal.App.3d 540, 546 [189 Cal.Rptr. 619] [subd. (d) applicable where defendant and two others picked up 20-year-old hitchhiker victim and committed numerous sexual assaults at three distinct times and in two distinct places].)

In *Craft*, we observed that, because the phrase "separate occasions" appears to be "ambiguous" and "susceptible of several meanings in the context of subdivision (d)," we were required to look beyond the language of the statute. (*Craft, supra,* 41 Cal.3d at p. 560.) Attempting to distill the purpose of the statute, we focused on the fundamental assessment of blame-worthiness: "As opposed to the person who commits several rapes on a single occasion, the one who rapes his victim on 'separate occasions' seems to deserve the harsher punishment automatically. Common moral sense teaches that other things being equal he is both more culpable because he turns away from one attack and after an opportunity for reflection undertakes another, and more harmful because he inflicts distinct trauma[] on his victim." (*Id.* at p. 561.) We then construed section 667.6, subdivision (d) to apply to a defendant who, after an opportunity to reflect on his actions, nevertheless resumes his sexually assaultive behavior. Such an opportunity to reflect occurs only when sexual offenses on a single victim are "separated by a period in which the defendant has lost or abandoned his opportunity to continue his attack." (*Craft,* at p. 562.)

The Legislature then amended section 667.6, by expressly defining "separate occasions" as follows: "In determining whether crimes against a single victim were committed on separate occasions . . . , the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (§ 667.6, subd. (d).)

Thus, in amending section 667.6, the Legislature adopted the core analysis in *Craft*, i.e., that the purpose for imposing mandatory consecutive sentences under subdivision (d) is to punish more severely the more culpable defendant who after an opportunity to reflect on his actions nevertheless resumes his sexually assaultive behavior. But it rejected the narrow rule in *Craft* insofar as it held that such opportunity to reflect and either continue on his course or

to bring it to an end must necessarily be understood to occur only in the event that the defendant has lost or abandoned the opportunity to continue his attack between sexual assaults. It abrogated the prior Court of Appeal opinions which relied on the duration of time or any change in physical location between crimes as the determinative factors. The legislative history reveals the aim to provide "a broader, less stringent standard to prove that multiple sex crimes occurred against the same victim on separate occasions." (Cal. Youth and Adult Correctional Agency, Enrolled Bill Rep. on Assem. Bill No. 2295 (1985-1986 Reg. Sess.) Sept. 1986, p. 2.)

Under that broader standard, the Courts of Appeal have not required that there be a distinct break of any specific duration of time or any change in physical location under section 667.6, subdivision (d). (*People v. Irvin* (1996) 43 Cal.App.4th 1063, 1070-1071 [51 Cal.Rptr.2d 127]; *People v. Plaza* (1995) 41 Cal.App.4th 377, 383-385 [48 Cal.Rptr.2d 710]; but see *People v. Pena* (1992) 7 Cal.App.4th 1294, 1316 [9 Cal.Rptr.2d 550]; *People v. Corona* (1988) 206 Cal.App.3d 13, 18 [253 Cal.Rptr. 327].) Thus, before the enactment of section 667.61, the Courts of Appeal had applied the "reasonable opportunity to reflect" test to decide whether sexual crimes involved the same victim on "separate occasions" within the meaning of section 667.6, subdivision (d). (*People v. Pena, supra,* 7 Cal.App.4th at p. 1316; *People v. Corona, supra,* 206 Cal.App.3d at p. 18.)

We should presume that the Legislature intended section 667.61, subdivision (g) to be construed similarly to section 667.6, subdivision (d), a statute on a similar subject using substantially similar language, *unless a contrary intent clearly appears.* (*In re Jerry R., supra,* 29 Cal.App.4th at p. 1437.) The majority does not dispute that the phrases "separate occasions" and "single occasion" are similar or that the two statutes involve a similar subject. Relying on a three strikes case (*People v. Deloza* (1998) 18 Cal.4th 585, 598 [76 Cal.Rptr.2d 255, 957 P.2d 945]), the majority holds that, given the legislative silence on the meaning of "single occasion," we should interpret those words, as requiring " 'at least a close temporal and spatial proximity between two events . . . .' " (Maj. opn., *ante,* at p. 106.) I disagree. The rule in the three strikes law does not apply here.

Both section 667.61 and the three strikes law impose indeterminate life sentences. Thus, in that broad general sense, they are similar to each other. But, far more closely related to each other, both sections 667.61 and 667.6 are specific, interrelated components of a sentencing scheme for sexual offenses. Both statutes apply, with minor exceptions, to the *same* sex offenses and frequently must be applied in the same case. Section 667.61, subdivision (g), expressly refers to section 667.6. Moreover, an early version

of the Assembly bill that led to the present statute used the word "incident," but was later changed to "occasion." (Maj. opn., *ante,* at p. 106, fn. 3.) "[T]he original terminology was criticized as follows: 'The term "incident" is not generally used or defined in relation to sex offenses. *The term "occasion" is used and defined for the application of sex offenses.*' " (*Ibid.*) Thus, the Legislature was aware of the interrelationship of section 667.61 with other sex offense statutes.

Presumably the Legislature, in enacting section 667.61, was also aware of its test for "separate occasions" and the underlying reasons for the express, earlier enactment of that test in section 667.6. (*People v. McGuire, supra,* 14 Cal.App.4th at p. 694.) Given the history of section 667.6, it is more reasonable to infer, from legislative silence on the meaning of "single occasion" in section 667.61, that the Legislature intended to continue with the same meaning as "separate occasions," as expressly defined in section 667.6, subdivision (d). In other words, *unless a contrary intent is expressed,* it would appear more reasonable to infer that the Legislature intended to continue to *repudiate* the time and place test in the specific area of sentencing for sex offenses, the test the majority now adopts.

The majority reasons that, "When the Legislature has intended a specific definition of the similar phrase 'separate occasion,' it has clearly so indicated," pointing to section 667.6, subdivision (d) as an example. (Maj. opn., *ante,* at p. 105.) It further reasons that, in the absence of an express definition, the phrase "single occasion" should be interpreted according to its " 'ordinary, generally understood meaning.' " (Maj. opn., *ante,* at pp. 105-107.) However, the very example that the majority relies on invalidates those premises, at least in the area of sex offense sentencing. As explained above, when the Legislature clarified the meaning of "separate occasions" in section 667.6, subdivision (d), seven years after its original enactment, it *expressly rejected* the "ordinary, generally understood meaning."

Other considerations support the inference that the Legislature intended that the phrase "single occasion" under section 667.61, subdivision (g) be synonymous with "separate occasions" under section 667.6, subdivision (d). We have used the term "single occasion" to describe the singular version of "separate occasions" as it relates to section 667.6, subdivisions (c) and (d). (See, e.g., *People v. Scott* (1994) 9 Cal.4th 331, 341 [36 Cal.Rptr.2d 627, 885 P.2d 1040]; *People v. Harrison* (1989) 48 Cal.3d 321, 330 [256 Cal.Rptr. 401, 768 P.2d 1078]; *Craft, supra,* 41 Cal.3d at p. 561.) I doubt that the Legislature intended to impose the confusing and cumbersome task on the trial court of determining, *based on two divergent standards,* both whether the same sex crimes against a single victim occurred on "separate occasions" and whether they occurred on one or more "single occasion[s]."

The majority finds it inexplicable why the Legislature chose, in section 667.61, subdivision (g), to frame the test with the words "single occasion." (Maj. opn., *ante*, at p. 106, fn. 3.) Section 667.61 can apply when a defendant commits a single specified sexual offense or multiple specified sexual offenses. (§ 667.61, subd. (c).) On the other hand section 667.6 subdivision (d) applies only when a defendant commits multiple specified sexual offenses. (*People v. Jones* (1988) 46 Cal.3d 585, 595 [250 Cal.Rptr. 635, 758 P.2d 1165].) Thus, the Legislature used the phrase "single occasion" in subdivision (g), rather than "separate occasions," to make clear that an indeterminate term can apply to single-offense cases.

I would affirm the judgment of the Court of Appeal.