Filed 1/27/15  P. v. Arrendondo CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059610 |
| v. | (Super.Ct.No. FCH07575) |
| JOHN EDWARD ARREDONDO, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Jon D. Ferguson, Judge.  Affirmed and remanded with directions.

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Kristen Chenelia, and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant John Edward Arredondo appeals after a resentencing hearing, in which the trial court imposed full, separate, consecutive sentences for two of the charged sex offenses, finding that they had taken place on "separate occasions" within the meaning of Penal Code former section 667.6, subdivision (d). Defendant argues that he had no reasonable opportunity to reflect on his actions between the commission of one offense and the other, and that the trial court erred in imposing consecutive sentences. We affirm the sentence, but remand with directions to correct clerical errors in the minute order of the resentencing hearing and in the abstract of judgment.

FACTS AND PROCEDURAL HISTORY

We have taken judicial notice of the record and decision in the prior appeal in this case, *People v. Arredondo* (Aug. 17, 2012, E053020 [nonpub. opn.]). The underlying offenses were described in our opinion in *People v. Arredondo, supra*, E053020:

In 2005, the victim, Theresa Z., was asleep in her bedroom at 3:00 a.m. when she awoke to find a man standing over her. He had his head wrapped, and he wore heavy work gloves. The victim started to scream, and the man put his hand over her mouth. Fearing for her children, and also thinking that the man might kill her, the victim flailed, kicked and screamed again. Suddenly, the man ran away. The victim called police.

The officers who responded found a beer can outside the back door of the victim's bedroom. The can had defendant's fingerprints on it.

Defendant was charged with one count of first degree residential burglary (count 1) and assault with intent to commit rape, sodomy or oral copulation (count 2).

2

After defendant's arrest for the 2005 crimes, he was also charged with an earlier incident that had happened in 2002. Iris S. was at home in her bedroom, while her husband was still awake in the living room. The victim had her infant child in bed with her, when she was awakened by someone sucking on her breast. At first she thought it was her husband, but then realized that it was a stranger, later identified as defendant. Defendant told the victim that she was beautiful and that he had been watching her. She asked him why he was there. Defendant started to remove the victim's clothes and rubbed her body. She resisted when he started to pull off her underwear, but he pulled harder and removed them. Defendant used his hand to masturbate the victim, which was physically painful for her. Defendant then made the victim sit up on the edge of the bed and, pulling her head, forced her to orally copulate him. The victim did not cry out because she was afraid defendant would hurt the baby or her husband. Defendant then moved the victim's hand onto his penis, and made her masturbate him until he ejaculated on her chest. Defendant hugged the victim and said the situation was "weird," because he had a wife and children.

After defendant left, the victim went to the hospital. The forensic examination showed the victim had sustained genital abrasions and a tear consistent with a penetration injury. Samples of the ejaculate were used to obtain a DNA profile for the perpetrator. That profile was later matched to defendant.

The 2002 events resulted in charges of forcible oral copulation (count 3), sexual penetration by a foreign object (count 4) and first degree residential burglary (count 5).

Defendant testified in his own behalf at trial. Defendant admitted he had several prior arrests for peeping. He blamed this activity on his abuse of drugs; he would feel agitated and would walk around an apartment complex. Curiosity led him to look into the windows of people's apartments. Defendant also had prior convictions for residential burglary with intent to commit theft, commercial burglary, receiving stolen property, and possession of a fraudulent check.

As to the charges for the 2002 incident, defendant claimed he could not have had sex because he had suffered a work injury to his testicles. He lost one testicle and the other was quite painful. He filed a workers' compensation claim and underwent treatments between March 2002 and July 2002. Although he was physiologically able to achieve erection by December 2002 (the charged offenses in counts 3, 4 and 5 took place in December 2002), he was still undergoing therapy to overcome his fear of sexual relations with his wife.

Defendant did admit, however, going to the victim's apartment complex at 6:00 a.m. in December 2002. He was drawn to the victim's apartment because it had a nice view of the sunrise. Defendant claimed that, at one point, he turned and looked into the window and saw the victim make eye contact with him as she was touching herself. Defendant said that he started to leave, but the victim opened the sliding glass door and invited him inside. Defendant indicated that all the sexual contacts with the victim were consensual.

Defendant denied any connection to the 2005 offenses, and said that he never broke into the victim's home. He explained his fingerprint on the beer can outside her home by saying that he had gone to see a house that was for rent in the neighborhood.

The jury did not believe defendant, and found him guilty as charged on all five counts. The jury also found true allegations as to counts 3 and 4 that each was committed during the course of a first degree residential burglary, and that another person other than an accomplice was present (one strike allegations). The court, in a bifurcated hearing, found true that defendant had previously been convicted of a serious or violent strike felony offense.

The court sentenced defendant to a determinate term of 12 years (six years doubled) on count 1. The sentences on counts 2 and 5 (the burglary counts) were stayed pursuant to Penal Code section 654. Defendant also received a consecutive indeterminate term of 100 years to life; the court imposed terms of 25 years to life on each of counts 3 and 4, under the one strike law for sex offenses, doubled to 50 years to life under the "Three Strikes" law.

Defendant appealed, contending that the trial court erred in imposing two separate sentences under the one strike law. The People conceded the error, under the version of Penal Code section 667.61, subdivision (g), that was in effect at the time of defendant's offenses. At the time of the offenses in 2002, Penal Code former section 667.61, subdivision (g), provided: "The term specified in subdivision (a) or (b) shall be imposed on the defendant once for any offense or offenses committed against a single victim

5

during a single occasion. . . . Terms for other offenses committed during a single occasion shall be imposed as authorized under any other law, including Section 667.6, if applicable." In *People v. Jones* (2001) 25 Cal.4th 98, the California Supreme Court construed a "single occasion" to mean "committed in close temporal and spatial proximity." (*Id*. at p. 107.) Counts 3 and 4 took place in one location, the victim's bedroom, within a very short time frame. Defendant manually penetrated the victim's vagina as she was lying on the bed. Then he made her sit up on the edge of the bed and orally copulate him. There is no evidence as to any lapse of time between the two events constituting counts 3 and 4. Both offenses took place in close temporal and spatial proximity. The People agreed that defendant could be sentenced to only one one strike sentence.

However, the People also argued that the finding of a "single occasion" for purposes of the one strike law did not preclude consecutive sentences on counts 3 and 4, if they could be found to have taken place on "separate occasions" within the meaning of Penal Code former section 667.6, subdivision (d). The California Supreme Court in *People v. Jones*, *supra*, 25 Cal.4th 98 had left open the possibility of consecutive sentencing under Penal Code former section 667.6, subdivision (d), explaining that the meaning of a "single occasion" in Penal Code former section 667.61, subdivision (g), had a different import from the term "separate occasions," as used in Penal Code former section 667.6, subdivision (d). As used in Penal Code former section 667.6, subdivision (d), the term "separate occasions" denoted the concept "whether the

6

defendant had a reasonable opportunity for reflection." (*People v. Jones*, *supra*, 25 Cal.4th 98, 105.) A finding that a defendant commits sex crimes on separate occasions "does not require a change in location or an obvious break in the perpetrator's behavior . . . ." (*Id*. at p. 104.)

We remanded for the trial court to select which of the two offenses, count 3 or count 4, would be subject to a one strike sentence, and to impose a determinate sentence as to the other count. We said, "The court will then have the opportunity to decide whether the determinate offense occurred on a 'separate occasion' (i.e., whether defendant had a reasonable opportunity to reflect before continuing the sexual assault) from the one-strike offense, and thus whether it should be sentenced consecutively to the one-strike offense, under Penal Code section 667.6, subdivision (d)." (*People v. Arredondo, supra,* E053020 at p. 15.)

On remand, the trial court found that the offenses in counts 3 and 4 occurred on separate occasions for purposes of Penal Code former section 667.6, and resentenced defendant as follows: a determinate term of 12 years on count 1; a consecutive term of 25 years to life on count 3 (one strike sentence), which was doubled to 50 years to life under the Three Strikes law; and a consecutive sentence on count 4, consisting of the aggravated term of eight years, doubled to 16 years under the Three Strikes law. Sentences for the remaining counts were imposed and stayed.

Defendant has again appealed. This time, he contends the evidence was insufficient to support the trial court's finding that he had a reasonable opportunity to

7

reflect on his conduct between penetrating the victim with his hand (count 4) and forcing her to orally copulate him (count 3).

## ANALYSIS

### I. Standard of Review

When a trial court makes findings that charged crimes occurred on "separate occasions," we review those findings under the substantial evidence standard. (See *People v. Chan* (2005) 128 Cal.App.4th 408, 424.) Substantial evidence is evidence that is reasonable in nature, credible, and of solid value. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 51.)

### II. Substantial Evidence Supported the Trial Court's Findings that Count 3 and Count 4 Took Place on "Separate Occasions"

Penal Code former section 667.6, subdivision (d), provided in part: "In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (Accord, *People v. Jones, supra,* 25 Cal.4th 98, 105; *People v. Garza* (2003) 107 Cal.App.4th 1081, 1092.)

8

Defendant urges that the offenses in counts 3 and 4 took place as part of one continuous course of sexual conduct, and therefore were not "separate occasions."  He also points to *People v. Corona* (1988) 206 Cal.App.3d 13, and *People v. Pena* (1992) 7 Cal.App.4th 1294, as support for the notion that a lack of cessation between sexually assaultive acts, or a mere change of position between different sexual acts, is insufficient, of itself, to provide a reasonable opportunity for reflection.

However, a finding of separate occasions does not require a break of any specific duration or a change in physical location.  (*People v. Jones, supra,* 25 Cal.4th 98, 104-105, citing *People v. Irvin* (1996) 43 Cal.App.4th 1063, 1071, and *People v. Plaza* (1995) 41 Cal.App.4th 377, 385.)

Here, the victim testified that she first awoke to someone sucking on her nipple.  At first, she thought it was her husband, and said his name.  Defendant answered, pretending he was the victim's husband, but the victim knew immediately it was not her husband's voice.  Defendant then removed the victim's clothes.  The victim resisted when defendant began to pull off her underwear, but he pulled more forcefully and removed them.  Defendant then rubbed the victim in the vaginal area, and penetrated her with his finger or a foreign object.  The penetration was very painful for the victim.

The victim was then asked the following question:

"Q:  Now, at some point in time, did you—actually, as he was doing this, [i.e., penetrating the victim] did you actually inform the intruder about something in regards to

9

your period?"  The victim related that she told defendant that she was menstruating at the time.  Defendant said, " 'I don't care.' "

After defendant had penetrated the victim, he pulled her up to a sitting position. Pressing on her head and shoulders, he guided her head toward his penis, and forced the victim to orally copulate him.  Defendant was wearing black sweatpants[1] and had a t-shirt pulled up to cover his face.  The victim recalled that defendant had his pants pulled down just enough to expose his penis.  The victim resisted by opening her mouth, letting defendant's penis fall out of her mouth.  At some point, defendant put the victim's hand onto his penis and made her masturbate him until he ejaculated onto her chest.

After defendant ejaculated onto the victim, he wiped both the victim and himself with his t-shirt, or with a towel taken from the victim's bathroom; the victim also used a shirt to wipe the ejaculate from her body.  Defendant then made the victim stand and give him a hug; he remarked, " 'This is weird, huh?  I have a wife and child.' "  Defendant left by the front door of the apartment.

The People point out that the exchange between the victim and defendant, when she told him she was menstruating and he said that he did not care, shows that defendant had an opportunity to reflect on his conduct.  Defendant necessarily reflected on his answer to the victim's remark; in the same way, defendant shifted his conduct, most likely in response to the information that the victim was bleeding menstrually, from

---

[1]  Other evidence indicated that, when defendant had left, the victim might have told her husband that the perpetrator wore white pants or beige pants.  At another point, the victim testified that she did not remember the color of defendant's sweatpants.

digital penetration to pulling the victim to a sitting position and forcing her to orally copulate him. Defendant responds that the record does not disclose when the conversation took place, but only that it took place at some time during a continuous sexual assault.

Defendant is mistaken. The context of the initial question to the victim about telling defendant that she was on her period makes clear that the victim told defendant she was menstruating "as he was doing this," i.e., as he was inserting a finger in the victim's vaginal area, and causing her pain. Defendant then responded that he did not care. Defendant also then altered the nature of his sexual conduct, pulling the victim up and forcing her to orally copulate him. In addition, defendant necessarily would have had to adjust his own clothing, pulling his pants down far enough to expose his penis, to achieve the objective of having the victim orally copulate him.

The evidence is sufficient to support a finding that defendant had a reasonable opportunity to reflect between the act of digital penetration (count 4) and the oral copulation (count 3), and indeed that reflection on the victim's menstruation caused defendant to alter his behavior, changing one kind of assault, in which defendant was touching the victim's menstrual fluid, for a different one, in which there was no such contact.

The trial court's determination that the two offenses took place on separate occasions was supported by substantial evidence. The court properly imposed a full consecutive sentence on count 4.

11

III. Additional Issues: Correction of the Minute Order and Abstract of Judgment

At resentencing, the trial court orally imposed sentence, as indicated above, consisting of a determinate term of 28 years (12 years on count 1, plus an upper term of eight years, doubled to 16 years, on count 4, consecutive to count 1), plus an indeterminate term of 50 years to life (25 years to life, doubled to 50 years to life, on count 3). As noted, the court also imposed and stayed sentences on the remaining counts.

However, the minute order erroneously indicates that the trial court imposed an additional term of 25 years to life on count 4, when no such additional sentence was imposed. In addition, the minute order incorrectly states that the court imposed an indeterminate term of 16 years to life on count 4, consecutive to count 3, when in fact the court imposed a determinate term on count 4, consecutive to count 1. The minutes also recite that defendant was sentenced to an aggregate term of 91 years to life; defendant was actually sentenced to an aggregate indeterminate term of 78 years to life. The abstract of judgment reflects the same errors, as well as an incorrect indication that the sentence was imposed at an initial sentencing hearing, rather than upon resentencing after a decision on appeal.

This court has inherent power to correct clerical errors and to order the abstract of judgment amended. (*People v. Garcia* (2008) 162 Cal.App.4th 18, 24, fn. 1; *People v. Hong* (1998) 64 Cal.App.4th 1071, 1075-1076.) We shall direct the trial court to prepare a corrected minute order and an amended abstract of judgment to properly indicate defendant's actual sentence as pronounced by the court on the record.

12

## DISPOSITION

The judgment is affirmed.  The matter is remanded with directions, however, to correct errors in the minute order of the resentencing hearing, and to amend the abstract of judgment to correctly reflect defendant's actual sentence as pronounced by the court. A copy of the amended abstract of judgment shall be forwarded to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:


RAMIREZ
P. J.


RICHLI
J.

13