Filed 12/12/13  P. v. Sanchez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>APOLINAR HERNANDEZ SANCHEZ,<br><br>    Defendant and Appellant. | G047419<br><br>(Super. Ct. No. 06WF0747)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gary S. Paer, Judge.  Affirmed.

Brett Harding Duxbury, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Sean M. Rodriquez, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Apolinar Hernandez Sanchez was convicted of continuous sexual abuse and commission of lewd acts against a child. The jury found true sentencing enhancement allegations of substantial sexual contact with a victim under 14 years of age, and that the crimes were committed against more than one victim. Under Penal Code section 667.61, often called the "One Strike" law, defendant was sentenced to a determinate term of six years, plus seven consecutive indeterminate terms of 15 years to life. We affirm the judgment in all respects.

On appeal, defendant argues the trial court's exclusion of certain impeachment evidence was an abuse of discretion and violated his constitutional rights. We disagree. The trial court permitted defendant to impeach two witnesses with evidence of their conduct showing moral turpitude, but refused to allow evidence of statements made at or near the time of their arrests for those crimes. The court correctly determined admission of the witnesses' statements would be more prejudicial than probative, would have resulted in an undue consumption of time, and would have required a minitrial on irrelevant issues within the trial.

Defendant also raises two arguments regarding his One Strike life terms. First, defendant contends that the trial court erred by imposing a One Strike term on count 5 because there was no written multiple-victim finding by the jury. After briefing was completed, the appellate record was augmented to include the written finding in question. Therefore, we conclude there was no error in this regard.

Finally, defendant argues the trial court erred by imposing One Strike sentences for both counts 2 and 3. Defendant contends that because those two crimes were committed against a single victim on a single occasion, only a single One Strike sentence could be imposed. The appellate record makes clear, however, that the two

crimes were not committed on a single occasion, as that term was used in Penal Code former section 667.61, subdivision (g). Therefore, there was no error in the sentence.[1]

STATEMENT OF FACTS AND PROCEDURAL HISTORY

M.R. (mother) and defendant began living together in 1999. Mother had four children: S. (then seven years old), J. (then six years old), M. (then three years old), and K. (then two years old).

Defendant began inappropriately touching S. when she was about eight years old. Defendant continued to molest her until after she turned 10 years old. During that time, defendant touched S.'s breasts and genitals, forced her to touch his genitals, and sodomized her.

Defendant began molesting M. when she was three years old. The molestation continued until she was nine years old. The acts of molestation included defendant touching M.'s genital area, forcing her to touch his genitals, vaginal intercourse, and sodomy.

On March 18, 2006, in the middle of the night, mother got out of the bed she shared with defendant, and went to the bathroom. When she returned to the bedroom, she observed defendant massaging M.'s buttocks and placing his thumbs into her anus. Mother yelled at defendant and hit him. Defendant asked mother to forgive him, then got dressed and left.

After defendant left, mother asked M. if defendant had touched her on previous occasions, and M. said he had. S. initially denied to the police and a social worker that anything had happened to her. She finally told mother that defendant had molested her, after her brother, J., said he had seen it happen. J. and K. both told mother

---

[1] In his opening appellate brief, defendant raises an additional issue regarding the correct calculation of his presentence custody credit. In his reply brief, however, defendant concedes that his custody credit was properly calculated.

they had seen defendant molesting M. and S.  After defendant was arrested, K. told mother he had seen defendant pull down M.'s pants.  K. had told defendant at that time that he would tell mother what he had seen, but defendant choked K. with a belt and said he would kill K. and mother if he told.  K. had kept quiet because he was afraid.

M. testified she had not told anyone about the abuse because she thought defendant would hurt her family and because defendant told her not to tell anyone; M. also thought the abuse must be okay because defendant was like a father to her. S. testified she had not told anyone about the abuse because she was scared and confused. J. did not tell anyone he saw defendant sodomizing S. because he was too scared.

Defendant was charged with one count of continuous sexual abuse (Pen. Code, § 288.5, subd. (a) [count 1]), and seven counts of commission of a lewd act upon a child (*id.*, § 288, subd. (a) [counts 2-8]).  The amended information alleged that he had substantial sexual contact with a child under 14 years of age with respect to counts 1, 2, 3, 5, 6, 7, and 8.  (*Id.*, § 1203.066, subd. (a)(8).)  The amended information also alleged that defendant committed an offense specified in Penal Code section 667.61, subdivision (c), against more than one victim, with respect to counts 2 through 8.  (*Id.*, § 667.61, subds. (b), (c)(7), (e)(5).)[2]

A jury convicted defendant of all counts, and found true all of the sentencing enhancement allegations.  The trial court sentenced defendant to 111 years to life, with the possibility of parole; the court sentenced defendant to a six-year determinate term on count 1, and seven consecutive 15-year-to-life terms on counts 2 through 8. Defendant timely appealed.

---

[2]  Before trial, the prosecutor moved to dismiss an additional count of continuous sexual abuse; the court granted the motion.  During trial, the prosecutor moved to dismiss sentencing enhancement allegations under Penal Code section 1203.066, subdivision (a)(7), which had been alleged as to all counts; the court also granted that motion.

DISCUSSION

I.

*REFUSAL TO PERMIT IMPEACHMENT EVIDENCE*

At trial, pursuant to *People v. Wheeler* (1992) 4 Cal.4th 284, the court admitted impeachment evidence that in 2008, two years after the sexual abuse was reported, mother and J. committed petty theft: J. (then 15 years old) stole property valued at $1.28, mother stole property valued at $34, and mother was found in possession of a fake government identification card.

Defendant wanted to impeach mother and J. with the following additional evidence stemming from the same incident: (1) J. told the police that mother had told him to be careful while stealing because there were "a lot of cameras" in the Wal-Mart store; (2) mother initially told the police that J. had stolen the goods by placing them in her purse; and (3) mother told the police she had the fake identification card to avoid paying taxes on her income from a second job. Defendant claims the trial court's refusal to admit the additional impeachment evidence was error.

In *People v. Wheeler*, *supra*, 4 Cal.4th at page 295, the Supreme Court held, "if past criminal conduct amounting to a misdemeanor has some logical bearing upon the veracity of a witness in a criminal proceeding, that conduct is admissible, subject to trial court discretion, as 'relevant' evidence under [California Constitution, article I,] section 28[, subdivision ](d)." Under *People v. Wheeler*, however, "[t]he trial court retains wide latitude to restrict cross-examination of an adverse witness on Evidence Code section 352 grounds without running afoul of the confrontation clause. [Citations.]" (*People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1080.) We review the trial court's decision to exclude the additional evidence for abuse of discretion. (*Id.* at p. 1081.)

In this case, the trial court found that the additional evidence that defendant sought to present would be more prejudicial than probative, would have involved an

undue consumption of time, and would have resulted in a minitrial with respect to issues wholly separate from the issues in the present case. We find no abuse of discretion in the trial court's decision. The court found that, under *People v. Wheeler*, evidence of *conduct* reflecting moral turpitude was admissible, but evidence of *statements* relating to the conduct was not. The court also expressed concern that if defendant's trial counsel sought to explore all of the statements made by mother and J. at the time they were detained and arrested, it would take an undue amount of time and get into many irrelevant matters. The court further found that mother's alleged intent in possessing the fake identification card did not show any greater moral turpitude than her possession of it in the first place. We conclude the trial court considered the facts, the proposed evidence, and the statutory and legal framework, and properly exercised its discretion to exclude the additional impeachment evidence defendant sought to present.

Even if the trial court had erred in excluding the evidence in question, we would conclude the error was harmless. The evidence against defendant was strong. The jury deliberated less than three and a half hours before reaching a verdict on eight criminal counts and a total of 14 sentencing enhancement allegations. As noted *ante*, evidence of mother's conduct was offered to challenge her credibility. Defendant's trial counsel was able to argue, from the evidence admitted, that (1) J.'s and mother's criminal conduct reflected on their credibility and believability, (2) J. had no moral qualms about being dishonest or about shoplifting, (3) mother and J. lied and stole together, (4) J. was not bothered by his admission that he lied to the police, (5) honesty was not mother's priority, and (6) mother and her children "lie and will continue to lie when they have no shame, no guilt for lying and that there's no consequences to lying." And, as the trial court noted, the possession of a fake government identification card was "[o]bviously" for an unlawful purpose. Therefore, additional evidence regarding mother's purpose in possessing the card was unnecessary.

6

With respect to defendant's argument that the exclusion of the additional impeachment evidence violated his federal constitutional right to due process, we disagree. "'[A]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's right to present a defense.' [Citations.]" (*People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103.) The trial court did not exclude all evidence relevant to the defense offered by defendant—that the molestation claims were fabricated by mother and her children. Under those circumstances, any error in excluding the additional impeachment evidence was harmless unless defendant could have demonstrated he would have received a more favorable result at trial but for the exclusion of the evidence. (*People v. McNeal* (2009) 46 Cal.4th 1183, 1203.) As explained *ante*, defendant cannot meet this standard.

The trial court did not prejudicially err in excluding the additional impeachment evidence.

## II.

### *THE TRIAL COURT PROPERLY IMPOSED A ONE STRIKE SENTENCE ON COUNT 5.*

Defendant argues that the trial court was not authorized to impose a consecutive 15-year-to-life sentence on count 5 because the jury did not return a signed One Strike multiple-victim finding with respect to that count. This court granted a motion to augment the record on appeal to include the written finding for count 5, which had not been included in the appellate record.[3] (The Attorney General filed the motion to

---

[3] The reporter's transcript reflects that in reading the jury's verdict, the court clerk read, in relevant part: "Verdict, we the jury in the above entitled action find the defendant Apolinar Hernandez Sanchez guilty of the crime of lewd act upon a child, a felony in violation of . . . section 288 (a) of the Penal Code of the State of California as charged in count V of the amended information victim S[.]. [¶] Finding as to substantial sexual conduct find it to be true. [¶] *Finding as to multiple victims find it to be true*." (Italics added.) (The parties waived a full reading of the findings forms, and agreed the court clerk could "just read the allegations, substantial sexual conduct true or not true? Multiple victim allegation, true or not true?")

augment, and defendant did not file any opposition.)  Because the record contains a written multiple-victim finding, the trial court did not err in imposing a consecutive One Strike term of 15 years to life on count 5.

III.

*THE TRIAL COURT DID NOT ERR BY IMPOSING ONE STRIKE SENTENCES ON COUNTS 2 AND 3 BECAUSE THEY WERE NOT COMMITTED ON A SINGLE OCCASION.*

Defendant argues the trial court erred by imposing One Strike sentences for both counts 2 and 3 because those counts involved sexual acts occurring against a single victim during a single occasion.

Penal Code former section 667.61, subdivision (g), which was the statute in effect when defendant committed the crimes, provided:  "[A One Strike term] shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion. . . . Terms for other offenses committed during a single occasion shall be imposed as authorized under any other law . . . ."  (Stats. 1998, ch. 936, § 9.)

Count 2 alleged defendant committed an act of vaginal intercourse upon M. in March 2006, and count 3 alleged that he committed an act of anal intercourse upon M. during the same date range.  M.'s testimony and the prosecutor's argument make clear that those two separate acts of abuse occurred on the same day.

A One Strike term is inappropriate under Penal Code former section 667.61, subdivision (g) where two different sexual offenses are committed against a single victim "during a single occasion."  In *People v. Jones* (2001) 25 Cal.4th 98, 107, the California Supreme Court held that the phrase "a single occasion," for purposes of former section 667.61, subdivision (g), means the sex offenses "were committed in close temporal and spatial proximity."  In that case, the court held that the defendant should receive "a *single* life sentence, rather than *three* consecutive life sentences, for a sequence of sexual assaults by defendant against one victim that *occurred during an uninterrupted*

8

*time frame* and in a single location." (*People v. Jones*, *supra*, at p. 107, third italics added.) Similarly, in *People v. Fuller* (2006) 135 Cal.App.4th 1336, the Court of Appeal held that the imposition of three One Strike sentences for three acts of rape against a single victim was improper: "All three rapes occurred within about an hour while both [the defendant] and Ms. L. remained inside her apartment. The only movement was the short distance from her bedroom to the living room. Defendant kept Ms. L. *under his continuous and uninterrupted control during the entire time of the incident*. Thus, there was a close temporal and spatial proximity between the three offenses. Accordingly, we vacate the sentence and remand for resentencing." (*Id.* at p. 1343, italics added.)

M.'s testimony makes clear that the acts of vaginal and anal intercourse did not occur during an uninterrupted timeframe, or while M. was in defendant's continuous and uninterrupted control. As relevant to this issue, M. testified:

"Q Well, you described for us that you are behind the door and he puts his penis in your anal. Then how is it—can you describe for us then how he put his penis inside your vagina?

"A A while passed—a while passed—okay. I think I went—

"Q I didn't mean to step on your answer. You said, 'a while passed.' What do you mean by 'a while'?

"A I went outside after.

"Q Okay.

"A *I went outside and went to go check on my brothers and I watched them for a while. And after that I went back inside the room to go get something and that's when he approached me*." (Italics added.)[4]

---

[4] At the sentencing hearing, the trial court indicated a mistaken belief that the two sexual acts in counts 2 and 3 did not occur on the same day. In view of the clarity of the record and the correctness of the sentences, we need not remand to allow the trial court to reconsider the sentences imposed.

Substantial evidence supports a finding that the sexual acts alleged in counts 2 and 3 did not occur during a single occasion, for purposes of Penal Code former section 667.61, subdivision (g). Therefore, the trial court did not err in imposing One Strike sentencing terms for both counts 2 and 3.

DISPOSITION

The judgment is affirmed.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

RYLAARSDAM, J.

10