Filed 11/4/15  P. v. Berry CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B254509 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA413129) |
| v. | |
| FRANK ANDRE BERRY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Edmund Wilcox Clarke and Michael Garcia, Judges.  Reversed and remanded with directions.

Jessica C. Butterick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven E. Mercer and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Following a bench trial, Frank Andre Berry was convicted of kidnapping (Pen. Code, § 207, subd. (a))[1] with a finding he had personally inflicted great bodily injury (§12022.7, subd. (a)), battery causing serious bodily injury (§ 243, subd. (d)) and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)).  As to all counts, the court found  Berry had suffered one prior serious or violent felony conviction within the meaning of section 667, subdivision (a)(1) and the three strikes law (§§ 667, subds. (b)-(j), 1170.12, subds. (a)-(d)) and had served four separate prison terms for felonies (§ 667.5, subd. (b)).  The court sentenced Berry to an aggregate state prison term of 24 years.

On appeal, Berry contends there was substantial evidence he was not mentally competent to stand trial; and the trial court abused its discretion by declining to convene a competency hearing under section 1368.  With respect to the sentence, Berry asserts the section 12022.7, subdivision (a) enhancement must be stricken because the evidence is insufficient he inflicted great bodily injury in furtherance of the kidnapping. Alternatively, Berry argues if the evidence is sufficient to support the enhancement, then the trial court erred in failing to stay the sentence on the aggravated battery conviction pursuant to section 654.  We conditionally reverse the convictions and remand for a retrospective competency hearing.  If Berry is found to have been competent at the time of trial, the judgment shall be reinstated with a modification that the sentence on count 2 for aggravated battery is stayed.

---

[1]     Statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

1.  *Pretrial Proceedings*

On October 11, 2013, when the jury trial was set to begin, Judge Charlaine Olmedo declared a doubt as to Berry's mental competence to stand trial, suspended criminal proceedings, and appointed psychiatrist Kory J. Knapke to evaluate Berry's competence under section 1368.[2] Judge Olmedo also ordered Berry's counsel to select a psychiatrist to examine Berry.

After meeting with Berry on November 4, 2013, Dr. Knapke reported that Berry was initially angry and agitated during the interview, but soon became calm and cooperative.[3] Berry logically and appropriately answered the psychiatrist's questions. Berry stated his hostile behavior in the courtroom was a reflection of his deep dissatisfaction with his attorney; and he rationally explained to Dr. Knapke why he was upset with appointed counsel. Dr. Knapke concluded, although Berry suffered from a mental disorder within the scope of section 1368, most likely schizophrenia disorder, bipolar type, he was consistently taking his psychiatric medication as prescribed. Dr. Knapke opined Berry understood the nature of the charges and proceedings against him,

---

[2]     Section 1368, subdivision (a) provides: "If, during the pendency of an action and prior to judgment, or during revocation proceedings for a violation of probation, mandatory supervision, postrelease community supervision, or parole, a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent." If the defendant's counsel concurs, the court is required to order a hearing on the subject of the defendant's competence. (*Id.*, subd. (b).)

[3]     Berry told Dr. Knapke that he recognized him, having been previously evaluated by the psychiatrist in other cases. Dr. Knapke reported he did not recognize Berry, and his records did not show any prior clinical interviews with him.

could rationally cooperate with and assist counsel at trial, and was competent to stand trial if he continued to take his medication.[4]

On November 6, 2013, the parties appeared before Judge Norm Shapiro, who stated he had reviewed Dr. Knapke's report and asked Berry's counsel how he would like to proceed. Berry's counsel requested a continuance to obtain Berry's medical records before seeking the appointment of a second mental health expert to examine Berry. During this discussion, Berry repeatedly interrupted his attorney, stating he refused to be examined by another mental health expert. Berry also insisted on having his appointed counsel replaced and proceeding to trial without delay.

After Judge Shapiro admonished Berry to refrain from further interruptions, the prosecutor objected to the appointment of another mental health expert, arguing Berry had been examined at this point by two mental health experts, Drs. Cohen and Knapke, both of whom had found Berry competent to stand trial. The prosecutor urged that an examination by a third mental health expert was unnecessary. Judge Shapiro agreed with the prosecutor and, noting Berry was very anxious to have his trial, declared Berry mentally competent and resumed criminal proceedings. At the conclusion of the hearing, Judge Shapiro heard and denied Berry's motion to replace his appointed counsel (*People v. Marsden* (1970) 2 Cal.3d 118).

On November 15, 2013, at the request of Berry's counsel, psychiatrist Jack Rothberg met with Berry and reported Berry was angry, paranoid, and uncooperative during the interview. Berry indicated he was upset with his attorney and claimed his counsel, the prosecutor and prospective jury were racists. Berry told Dr. Rothberg he had no idea why he was in custody and became agitated when the psychiatrist mentioned the criminal charges and underlying facts. As a result of the meeting, Dr. Rothberg concluded, Berry "understands the nature and the purpose of the proceedings though this is clearly colored by paranoid thinking. He more importantly would certainly have

---

[4] Dr. Knapke reported that prior to interviewing Berry, he had reviewed an earlier section 1368 "short report" by psychologist Mark Cohen. This report is not part of the record on appeal.

4

difficulty cooperating with counsel in preparation of a suitable defense. He refused to provide any information about his background or mental health history, concerned that we would obtain records and use it [sic] even though this would obviously be a mitigating factor under the circumstances since this is a very serious charge. He is delusional about the roles of all the participants. He was paranoid of me. By virtue of his inability to cooperate with counsel, he would not be competent to stand trial. He clearly requires more aggressive treatment with anti-psychotic medication even though he is on a maximum dose of [such medication]. This apparently is not holding him. He clearly needs to go to the state hospital for aggressive treatment with anti-psychotic medication. Involuntary administration of medication may be necessary." [¶] . . . [¶] . . . "Treatment with antipsychotic medication is very likely to render Mr. Berry competent to stand trial." Before addressing Berry's request, Judge Edmund Wilcox Clarke stated he had reviewed Dr. Knapke's report concerning Berry's competence to stand trial. In response, Berry's counsel produced a copy of Dr. Rothberg's report. After reading the report, Judge Clarke offered to clear the courtroom to enable Berry and his counsel to present in confidence any new information bearing on Berry's competence. The prosecutor objected, arguing she had not seen Dr. Rothberg's report and if Judge Clarke intended to declare a doubt as to Berry's competence, the People would demand a section 1369 competency trial. Judge Clarke stated he was not declaring a doubt as to Berry's competence and explained the issue before him was whether the reports created a doubt in his mind regarding Berry's competence to stand trial. Judge Clarke then advised counsel, "As you both know, it's the court's doctor that matters. If [Berry's counsel] shares something [in a closed courtroom] that raises a doubt in my mind, then we can set it for something, if needed."

Berry's counsel asked Judge Clarke to suspend criminal proceedings and appoint a third mental health expert to evaluate Berry in light of Dr. Knapke's and Dr. Rothberg's conflicting reports. Judge Clarke replied he did not read Dr. Rothberg's report as concluding Berry was incompetent to stand trial. Berry's counsel pointed to two sentences in the report: "By virtue of [Berry's] inability to cooperate with counsel, he would not be competent to stand trial. He clearly requires more aggressive treatment

5

with anti-psychotic medication even though he is on a maximum dose of [such medication]." Judge Clarke stated, "That does not say he is not competent. It says he needs treatment. The sentence [sic] of that since you might want to argue, which is what I would argue in your spot, it says virtue of et cetera [sic], that is clearly not a statement of he is. It's he would be." Judge Clarke then informed counsel he did not have a doubt as to Berry's competence to stand trial and granted Berry's motion to represent himself.

2. *Bench Trial and Court's Findings*

A bench trial was held on January 27, 2014 , at which Berry represented himself after waiving his rights to a jury trial.[5] According to the evidence at trial, Jacqui Willis was waiting for a friend on the corner of 42nd Street and Broadway in Los Angeles at approximately 2:30 a.m. on April 18, 2013. Willis testified that Berry, whom she did not know, came up behind her. Berry had a can of something in his hand, and he asked Willis if he could talk to her and offered her a drink. Willis could smell alcohol and told him, "No thank you." Berry then said, "I'm going to take you somewhere and you are going to have to take your panties off." Frightened, Willis ran into a nearby donut shop and sat down. After following her into the donut shop, Berry slapped Willis in the face, causing her eye glasses to fall and break. The donut shop employees refused to call the police and demanded that Willis leave.

Willis ran across the street to a friend, Kiz Patterson, who was sleeping next to a bus stop. Willis awakened Patterson and told her what had happened. Berry followed Willis across the street and started beating her. Willis found a steel rake or a broom and tried to defend herself, but Berry grabbed it and began hitting her with it. Berry repeatedly punched Willis in the arm, chest and back, knocking her to the ground. He then kicked her in the stomach, back and side until she lost consciousness. As a result of the beating, Willis suffered a black eye, a hair line fracture, a broken jaw and the loss of four or five teeth.

---

[5]     Judge Michael Garcia presided over the bench trial.

6

Patterson testified that Berry emptied a nearby shopping cart, threw the unconscious Willis inside, and pushed the cart two blocks down the street, where he was apprehended by the police.

Berry testified to his defense of mistaken identity. He denied beating Willis and claimed to have found her unconscious on the sidewalk and was attempting to help her.

At the conclusion of the bench trial, the court determined the three counts had been proved beyond a reasonable doubt and found true the prior conviction allegations.

## DISCUSSION

1. *There Was Substantial Evidence Berry Was Not Competent to Stand Trial*

      a. *Principles governing competency proceedings*

"A person cannot be tried or adjudged to punishment . . . while that person is mentally incompetent." (§ 1367, subd. (a); see *People v. Sattiewhite* (2014) 59 Cal.4th 446, 464 [""""[b]oth the due process clause of the Fourteenth Amendment to the United States Constitution and state law prohibit the state from trying or convicting a criminal defendant while he or she is mentally incompetent""""] (*Sattiewhite*); *People v. Rogers* (2006) 39 Cal.4th 826, 846 [due process prohibits trying or convicting a defendant who is mentally incompetent].) A defendant is incompetent if it is proved, "as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a); see *Sattiewhite*, at p. 464; *People v. Lawley* (2002) 27 Cal.4th 102, 131.)

"'Both federal due process and state law require a trial judge to suspend trial proceedings and conduct a competency hearing whenever the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial. [Citations.] . . . Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations.'" (*Sattiewhite, supra*, 59 Cal.4th at p. 464; accord, *People v. Rogers, supra,* 39 Cal.4th at p. 847.) Pursuant to

section 1368, if the trial court and defense counsel express a doubt as to the defendant's competence to stand trial, the court must hold a competency hearing to determine the question of the defendant's mental competence in accordance with the specific procedures mandated by section 1369.[6] (See, e.g. *People v. Hale* (1988) 44 Cal.3d 531, 541 ["once a doubt has arisen as to the competence of the defendant to stand trial, the trial court has no jurisdiction to proceed with the case against the defendant without first determining his competence in a section 1368 hearing"].)

Standing alone, however, defense counsel's expressed belief that a defendant is mentally incompetent does not automatically trigger a section 1369 competency hearing. "Counsel's assertion of a belief in a client's incompetence is entitled to some weight. But unless the court itself has declared a doubt as to the defendant's competence, and has asked for counsel's opinion on the subject, counsel's assertions that his or her client is or may be incompetent does not, in the absence of substantial evidence to that effect, require the court to hold a competency hearing." (*People v. Mai* (2013) 57 Cal.4th 986, 1033; accord, *Sattiewhite, supra*, 59 Cal.4th at p. 465.) "By the same token, and absent a showing of 'incompetence' that is 'substantial' as a matter of law, the trial judge's decision not to order a competency hearing is entitled to great deference, because the trial court is in the best position to observe the defendant during trial." (*Mai*, at p. 1033; accord, *Sattiewhite*, at p. 465.) Accordingly, the trial court's rulings regarding competency are generally reviewed for an abuse of discretion. (See *People v. Ramos* (2004) 34 Cal.4th 494, 507.)

However, when substantial evidence is presented, a doubt as to the defendant's competence exists, "no matter how persuasive other evidence—testimony of prosecution witnesses or the court's own observations of the accused—may be to the contrary."

---

[6]    Section 1369, subdivision (a) provides: "The court shall appoint a psychiatrist or licensed psychologist, and any other expert the court may deem appropriate, to examine the defendant. In any case where the defendant or the defendant's counsel informs the court that the defendant is not seeking a finding of mental incompetence, the court shall appoint two psychiatrists, licensed psychologists or a combination thereof."

(*People v. Pennington* (1967) 66 Cal.2d 508, 518-519 [defendant presented substantial evidence he was incompetent and prosecution presented substantial evidence he was competent; "however, once it is determined that defendant's showing was substantial, it is immaterial that the prosecution's evidence may seem more persuasive'; "the conflict can only be resolved upon a special trial before the judge or jury, if a jury is requested"].)  At this point, the trial judge's refusal to hold a competency hearing is a denial of due process and reversible error per se.  (See *Pennington*, at p. 511; *Pate v. Robinson* (1966) 383 U.S. 375 [86 S.Ct. 836, 15 L.Ed.2d 836]).

b. *Dr. Rothberg's report s*upported a finding of doubt as to Berry's competence

Here, although Judge Clarke did not declare a doubt as to Berry's competence, there was substantial evidence before the court of Berry's incompetence to require that a section 1368 hearing be conducted.  The evidence consisted of reports by Dr. Knapke, Dr. Rothberg and possibly an earlier report by Dr. Cohen.  The reports by Drs. Cohen and Knapke concluded Berry was competent to stand trial.  Judge Clarke's view of Dr. Rothberg's report was the psychiatrist did not find Berry incompetent at the time, but instead concluded Berry would become incompetent if he were not properly treated.  The report, however, states the opposite conclusion.

Dr. Rothberg reported, although Berry's perceptions were skewed by paranoid delusions, he appeared to understand the criminal proceedings against him.  The psychiatrist then determined, "more importantly," Berry "would have difficulty cooperating with counsel in preparing a suitable defense."  Dr. Rothberg based his opinion on Berry's paranoid beliefs, prompting Berry to refuse to talk about his mental health and the underlying facts of the case.  Dr. Rothberg concluded, "By virtue of [Berry's] inability to cooperate with counsel, he would not be competent to stand trial. He clearly requires more aggressive treatment with anti-psychotic medication even though he is on a maximum dose of [such medication]."  Dr. Rothberg ended his report by stating, "Treatment with antipsychotic medication is very likely to render Mr. Berry competent to stand trial."  In other words, according to Dr. Rothberg, the current state of

9

Berry's mental illness prevented him from assisting in his defense, thereby rendering Berry incompetent to stand trial. (See § 1367, subd. (a).)

To be sure, Judge Clarke was the third bench officer faced with the issue of Berry's competence, and Berry had been found competent to stand trial just one month earlier. Moreover, the delusional thoughts Barry expressed to Dr. Rothberg do not alone constitute substantial evidence of incompetence. (See, e.g., *People v. Welch* (1999) 20 Cal.4th 701, 742 ["'more is required to raise a doubt than mere bizarre actions [citation] or bizarre statements'"]) and much of Berry's abrasive courtroom behavior was possibly attributable to his intense personal dislike of his defense counsel. Nonetheless, the critical issue was whether Berry's mental illness impeded his ability to assist his attorney in his defense. Because the psychiatrist who had most recently examined Berry plainly concluded that it did, this is substantial evidence triggering the need for a hearing. It is unclear whether Judge Clarke misread Dr. Rothberg's report or discounted it under the mistaken impression that only the opinion of a court-appointed mental health expert was relevant or dispositive. In any event, the report was sufficient to require Judge Clarke to declare a doubt as to Berry's competence. Because a trial court has no jurisdiction to proceed with a case against a defendant without first determining his or her competence in a hearing once such a doubt has arisen, we must conditionally reverse the judgment against Berry.

2. *There Is Sufficient Evidence Berry Inflicted Great Bodily Injury in the Commission of the Kidnapping*.

Berry contends the evidence is insufficient he personally inflicted great bodily injury "in the commission of" the kidnapping as required by section 12022.7. Berry does not dispute he inflicted great bodily injury on Willis. But, he characterizes the kidnapping as a separate crime of opportunity, arguing there is no evidence that he intended to kidnap Willis when he initially approached her or that he beat her to facilitate the subsequent kidnapping. According to Berry, the enhancement must therefore be stricken because by the time he engaged in kidnapping Willis, he had finished beating and seriously injuring her.

10

Under section 12022.7, subdivision (a), "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." In *People v. Jones* (2001) 25 Cal.4th 98 (*Jones*), the California Supreme Court defined "in the commission of" in the context of section 12022.3, subdivision (a), which enhances a defendant's sentence for the use of a weapon during the commission of certain sex offenses. In *Jones*, the defendant got out of a car where he had subjected the victim to various sex offenses. (*Jones, supra*, 25 Cal.4th at p. 101.) As the victim attempted to emerge from the car, the defendant pushed her back inside and retrieved a knife, which he put to the victim's face. Shortly thereafter, the defendant left. (*Id.* at p. 102.) Rejecting the defendant's argument the weapon-enhancement was unrelated to the sex offenses, having been completed before the knife was used, the Court held "the 'commission of' a sexual offense specified in Penal Code section 12022.3, subdivision (a) does not end with the completion of the sex act, but continues as long as the assailant maintains control over the victim." (*Id.* at p. 109.)

Earlier, in *People v. Mixon* (1990) 225 Cal.App.3d 1471, 1488, this court held, for purposes of the section 12022.7, subdivision (a) enhancement, the defendant's "commission" of burglary did not end when he left the victim's apartment, taking the victim and the stolen property with him. As we explained, "'[i]n enacting section 12022.7, the clear intent of the Legislature was to deter infliction of serious bodily injury on victims of burglary, robbery and other felonies . . . .'" (*Ibid.*) We concluded that by removing the victim from the location of the burglary, the "defendant extended the need for section 12022.7's deterrent threat and thereby its effect." (*Ibid.*; see also *People v. Gomez* (2008) 43 Cal.4th 249, 254 [in a continuing offense "no artificial parsing is required as to the precise moment or order in which the elements are satisfied"].)

There is ample evidence Berry inflicted great bodily injury on Willis in the commission of the kidnapping. After Willis rebuffed his initial offer of a drink, Berry announced his intention to kidnap and sexually assault her. Rather than submit, Willis

fled. Berry followed Willis and began making attempts to coerce her physically. As Willis continued to resist, Berry's attacks escalated in severity, beginning with a slap in the face and ending with a beating to the point of unconsciousness and severe injury. The crime of kidnapping occurs when a "person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains or arrests any person in this state, and carries the person into another country, state or county, or into another part of the same county . . . ." (§ 207, subd. (a).) The court could reasonably infer that Berry forcibly detained Willis by beating her into unconsciousness so that he could carry her away without further resistance. Just as section 12022.7 applies so long as the defendant maintains control over the victim, the statute must also apply where the defendant inflicts great bodily injury as the means to gain control over the victim.

3. *Imposition of Sentence on the Aggravated Battery Count Should Have Been Stayed*

The trial court sentenced Berry to an aggregate state prison term of 24 years: On count 1, ten years (the five-year middle term doubled under the three strikes law) for kidnapping, plus five years for the section 12022.7, subdivision (a) enhancement, plus five years for the section 667, subdivision (a)(1) enhancement, plus one year for each of the four section 667.5, subdivision (b) enhancements; on count 2, a consecutive term of two years (one-third the middle term doubled) for battery with serious bodily injury; and on count 3, the court stayed sentencing under section 654.

Berry argues the sentence imposed on count 2, for battery with serious bodily injury, should have been stayed under section 654, which prohibits separate punishment for multiple offenses arising from the same act or from a series of acts constituting an indivisible course of criminal conduct. (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507; *People v. Latimer* (1993) 5 Cal.4th 1203, 1206.)[7] "'Whether a course of criminal conduct

_____

[7] Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or

12

is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses, but not for more than one.'" (*Rodriguez*, at p. 507.)

Generally, the trial court has broad discretion in determining whether a defendant had multiple criminal objectives independent of, and not merely incidental to, each other for purposes of section 654. Here the trial court made no express findings. While on appeal we will uphold the court's express or implied finding a defendant held multiple criminal objectives if it is supported by substantial evidence (see *People v. Robinson* (2010) 47 Cal.4th 1104, 1126), here the record does not support that finding.

As we previously discussed, the evidence shows the aggravated battery and assault offenses arose out of the same indivisible course of conduct as kidnapping count and both were incident to the same objective.[8]

## DISPOSITION

The judgment is conditionally reversed and the matter remanded to allow the trial court to determine whether a retrospective competency hearing is feasible to evaluate Berry's competence at the time of the prior trial. If a retrospective competency hearing is held and Berry is found to have been competent at the time of trial, the court must reinstate the judgment, as modified to stay the sentence on count 2 for aggravated battery. If a retrospective competency hearing is held and Berry is found to have been incompetent at the time of trial or if the court determines a retrospective competency hearing is not now feasible, the judgment must be vacated, and the trial court must set the

omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

[8] Respondent strenuously asserts that this was a continuous course or conduct in urging us to affirm the imposition of the enhancement, although it inexplicably also argues the defendant had independent objectives in arguing against the application of section 654. We find the first argument to be supported by the record.

case for a new trial, or if Berry is incompetent to stand trial, proceed as mandated by statute.


ZELON, Acting P. J.


We concur:


SEGAL, J.


BECKLOFF, J.*

---

*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.